IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| LIUDMILA M. MURAVEVA,<br><br>       Plaintiff,<br><br>   v.<br><br>CITY OF WILDWOOD, et al.,<br><br>       Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 17-916 (JBS-JS)<br><br>**OPINION** |

APPEARANCES:

Peter M. Kober, Esq.
KOBER LAW FIRM
1864 Route 70 East
Cherry Hill, NJ 08003
    Attorney for Plaintiff

James R. Birchmeier, Esq.
BIRCHMEIER & POWELL LLC
PO Box 582
Tuckahoe, NJ 08250
    Attorney for Defendant

**SIMANDLE**, District Judge:

## I.    INTRODUCTION

Plaintiff Luidmila Muraveva ("Plaintiff") brings this action against Defendants City of Wildwood, Ronald Harwood ("Harwood"), and Steven Booy ("Booy"),[1] alleging a variety of claims arising from actions taken by Defendants involving a property owned by Plaintiff. According to Plaintiff, these

---

[1] The Court shall hereinafter refer to Defendants City of Wildwood, Harwood, and Booy as "Defendants," and Defendants Harwood and Booy as "the Individual Defendants."

actions infringed upon her Fourteenth Amendment substantive due process rights and/or constituted retaliation for exercise of Plaintiff's First Amendment rights. The context of this dispute arises from regulatory procedures followed by Defendants in investigating whether Plaintiff was maintaining a rooming house, rather than an apartment house, contrary to municipal ordinances. Pending before the Court is Defendants' motion for summary judgment, which, for the reasons discussed below, will be granted in its entirety.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background[2]

Plaintiff Luidmila Muraveva has lived at 145 East Roberts Avenue in Wildwood, New Jersey since December 2007. (Pl. Dep. [Docket Item 21-1 at 18-35] at 7:17-21.) Her husband, Clayton Smith, passed away on February 23, 2014. (Id. at 23:6-11.) She

---

[2] The Court distills this version of events from the parties' statements of material facts, affidavits, and exhibits, and recounts them in the manner most favorable to Plaintiff, as the party opposing summary judgment. The Court disregards, as it must, those portions of the parties' statements of material facts that lack citation to relevant record evidence (unless admitted by the opponent), contain improper legal argument or conclusions, or recite factual irrelevancies. See generally Kemly v. Werner Co., 151 F. Supp. 3d 496, 499 n.2 (D.N.J. 2015 (disregarding portions of the parties' statements of material facts on these grounds); Jones v. Sanko Streamship Co., Ltd., 148 F. Supp. 3d 374, 379 n.9 (D.N.J. 2015) (same). Where not otherwise noted, the facts are undisputed by the parties.

has been the legal owner of the property since 2016. (Id. at
12:15-13-3.)

        1.    The February – April 2015 property inspections
            and citations

The property at 145 East Roberts Avenue has two buildings
comprised of three units: a front building with one first-floor
unit and a second unit consisting of the second and third
floors, and a back building that is its own unit. (Id. at 10:5-
9; 13:23-14:13.) According to an April 17, 2012 letter signed by
Plaintiff and her husband (since deceased), the property is a
"legal triplex," and "[t]he first floor is rented as one unit
and the second and third floor are rented as one unit," while
the third unit (the back building) is "owner occupied." (April
17, 2012 Letter [Docket Item 21-1 at 42].)

Since 2009, Plaintiff has lived in the back building and
rented out the front building. (Pl. Dep. at 8:5-21; 23:6-8.)
Plaintiff does not always rent out the front building, however.
For example, each year, her son would stay in the second floor
when he visited from Russia. (Id. at 9:1-10:4.) Plaintiff also
testified that, because she was denied a "mercantile license" by
the City of Wildwood between January and June of 2015 (id. at
64:1-12), not in dispute in this case, she did not recall
renting out the front building to anyone during this time. (Id.
at 18:7-10; 65:17-23.)

In February 2015, Plaintiff visited Wildwood City Hall to schedule an annual fire inspection of her property. (Id. at 26:14-27:15.) On February 12, 2015, the inspection was conducted by Defendant Harwood, a Fire Official and Fire & Housing Official for the City of Wildwood. (Harwood Dep. [Docket Item 21-1 at 50-64] at 5:18-19; 15:1-8.) Defendant Harwood testified that his inspection revealed there were dead bolts and "hasps"[3] located on the exterior of all interior bedroom doors and the doors going to the third floor, which violated the Wildwood City Fire Code. (Id. at 16:13-17:7.) Plaintiff disputes that there were ever locks on the bedroom doors, other than "knob locks"[4] that were original to the front building. (Pl. Dep. at 20:17-21:13; 24:6-7; 39:11-13.) Such individual bedroom locks could evidence that the bedrooms in these apartments were individually keyed and rented, i.e., that the front property may be a rooming house.

Defendant Harwood testified that because he observed exterior locks on the interior bedroom doors and doors leading to the third floor, he believed Plaintiff might be operating the

---

[3] According to Defendant Harwood, "hasps" are "doors that go over and have a lock on them. It folds over and there is a lock on it." (Harwood Dep. at 17:12-14.)

[4] According to Plaintiff, "knob locks" are "a handle which you can turn, knob on the inside and handle which you can turn and lock for key outside." (Pl. Dep. at 20:23-21:3.)

front building as a non-permitted "rooming house," that is, she was renting out each bedroom individually. (Harwood Dep. at 27:6-28:12.) Sometime after the February 12th inspection, Defendant Harwood met in person with Defendant Booy, a Zoning Officer for the City of Wildwood, to relay this information. (Id. at 23:14-19.)

Based on his conversation with Defendant Harwood, Defendant Booy issued a Notice of Violations and Order to Correct to Plaintiff. (Booy Dep. [Docket Item 21-1 at 70-87] at 42:13-45:6.) On March 2, 2015, Plaintiff received by mail the Notice of Violations and Order to Correct (Pl. Dep. at 33:22-36:10), which indicated that "interior deadbolts prohibited" on "all bedroom doors and going to the third bedroom," and directed Plaintiff to "[a]bate by" March 14, 2015. (See First Notice of Violations and Order to Correct [Docket Item 21-1 at 43-44].) The following day, Plaintiff responded by letter to the Wildwood Fire Department and Defendant Harwood, explaining why she did not believe she had violated the Wildwood City Fire Code. (See March 3, 2015 Letter [Docket Item 21-1 at 45].) Plaintiff also called Defendant Booy to question why she had received the Notice. (Booy Dep. at 45:4-12.) Defendant Booy testified that, during this conversation, he requested access to Plaintiff's property to determine whether she was operating the front building as a rooming house, which Plaintiff refused to grant,

but he does not recall what else was discussed with Plaintiff. (Id. at 45:13-46:25.)

On March 3, 2015, Defendant Booy sent Plaintiff a letter memorializing his telephone conversation with her as follows:

> After receiving my initial notice of violation dated 2/13/15 you contacted me to discuss that notice. You have stated that the keyed locks that are installed on the interior doors are original to the property, and that therefore they should not need to be removed. At that point I told you that I would need to inspect the property in order to make a determination as to whether the door hardware needed to be replaced, but that renting individual rooms was not permitted regardless of the original character of the locks on the doors. You responded by informing me that you would speak with your attorney and call me back to schedule an inspection. To date, I have received no response.

(March 3, 2015 Letter [Docket Item 21-1 at 89].) Defendant Booy further noted: "This letter shall serve as formal notice that an inspection at the above listed property is required. You must contact me within 10 days from the date of this notice in order to schedule an inspection. Failure to do so will result in a summons being issued." (Id.)

Defendant Harwood subsequently conducted a follow-up inspection of Plaintiff's property and saw the same violations with the bedroom door locks he previously observed. (Harwood Dep. at 34:12-21.) On March 16, 2015, Plaintiff received a second Notice of Violations and Order to Correct from Defendant Harwood addressing the same alleged lock-related violations, with instructions to "[a]bate by" April 16, 2015. (See Second

Notice of Violations and Order to Correct [Docket Item 21-1 at
65-66].) That same day, Defendant Booy issued a Summons to
Plaintiff for illegal operation of a rooming house, in violation
of Wildwood Municipal Ordinance No. 72808, Section 409D.[5] (See
Summons [Docket Item 21-1 at 46].)

On April 13, 2015, Defendant Harwood conducted a third
inspection of Plaintiff's property. (Id. at 39:25-40:5; Harwood
Dep. at 42:12-43-2.) Defendant Harwood testified that, upon
reinspection, Plaintiff had removed the dead bolts from the
interior of the exterior door bedrooms (Harwood Dep. at 47:6-9),
and he "did away with her fine and everything [because] [s]he
abated the situation on my inspection." (Id. at 44:12-14.) A
subsequently prepared Inspection Report[6] indicates that the April
13th inspection began at 11:21 and ended at 11:22, and notes
"VIOLATION ABATED ON ALL DOORS WAIVE PENALTY." (April 13, 2015
Inspection Report [Docket Item 21-1 at 67].) Plaintiff maintains
that she did not make any changes to the locks between February
and April 2015, and that Defendant Harwood never inspected the

---

[5] According to Wildwood Municipal Ordinance No. 72808, Section
409D, non-permitted uses are not permitted to operate, and
rooming houses are not a permitted use. (Booy Dep. at 57:17-
58:1.)

[6] Defendant Harwood testified that he did not personally prepare
the Inspection Report (Harwood Dep. at 45:12-18), and that he
believes the Inspection Report was prepared by someone with the
Wildwood Planning and Zoning Department. (Id. at 43:17-18;
45:19-23).

second or third floors of the front building during his April 13th reinspection. (Pl. Dep. at 40:19-41:18.)

Plaintiff hired an attorney, Joe Grassi, Esq. (Pl. Dep. at 39:17-24.) On April 15, 2015, Mr. Grassi appeared on Plaintiff's behalf in Wildwood City Municipal Court. (April 15, 2015 Transcript [Docket Item 21-1 at 47-49].) During this hearing, Prosecutor Ron Gelzunas moved to dismiss the Summons "without prejudice subject to at least one further inspection to ensure that the compliance is genuine and will remain in compliance . . . within the next 90 days." (Id. at 2:21-3:4.) The Municipal Court dismissed the matter without prejudice (id. at 3:16-19), and the City of Wildwood subsequently issued Plaintiff a fire inspection certificate for the 2015 year. (Pl. Dep. at 65:2-4.)

## 2. The April 2016 incident

Plaintiff testified that on April 9, 2016 she was threatened with imminent bodily harm by an African American tenant who had been staying at the property without Plaintiff's permission. (Pl. Dep. at 59:22-60:19.) According to Plaintiff, she called the Wildwood Police and told them this man "is threatening to kill me." (Id. at 60:20-23.) Plaintiff testified that the police responded to her call, but "didn't remove him" and "did nothing." (Id. at 60:24-25.) Instead, the police told Plaintiff she could not go into the house while the tenant stayed there. (Id. at 60:25-61:3.) Plaintiff also testified that

one officer gave her a ticket "for letting my tenants out in the middle of the road because he was African American," and that she did not remember the Wildwood Police Officers' names, except she believed one was named "Williams or something like this." (Id. at 61:6-11.) Neither of the Individual Defendants is a member of the Wildwood Police Department, and Plaintiff produced no evidence linking them to the alleged April 2016 incident.

### 3. The June 2016 municipal court hearing

On June 10, 2016, Plaintiff appeared in Wildwood City Municipal Court to dispute a ticket she had received from the Wildwood Police Department for hitting another car in a private parking lot. (Id. at 57:4-15.) According to Plaintiff, "Wildwood Police gave me a ticket on private parking lot. Even by law they shouldn't do it with appearance in the Court. They shouldn't give me a ticket on private parking lot with appearance in court. This was the case why I was in the court in [June]." (Id. at 56:14-19.) At this Wildwood City Municipal Court hearing, Plaintiff alleges she made a request for a Russian interpreter, which was denied by "a judge with a Spanish name . . . [like] Gonzalez or something." (Id. at 57:19-58-4.) Plaintiff had no witnesses, was found guilty, and paid the ticket. (Id. at 58:6-7.) Neither of the Individual Defendants is alleged to have a connection to the parking lot incident, the police officer's issuance of a summons, or the Municipal Court appearance.

9

4. <u>Other incidents involving Plaintiff and City of
   Wildwood</u>

According to Plaintiff, "[b]efore February 12, 2015, City
of Wildwood officials harassed my husband and myself and tried
to put [] us out of business on the account we rented to low
income people." (Pl. Dep. at 49:19-50:7) (citing Pl. Answers to
Interrog.). These incidents from 2011-2014 involving Plaintiff
and the City of Wildwood are summarized as follows:

o    On August 5, 2011, Plaintiff was arrested for
     disorderly conduct in violation of N.J.S.A. § 2C:33-
     2a(1), and she later sued the arresting officer, Shawn
     Toffoli, the City of Wildwood, and the City of
     Wildwood Police Department for false arrest pursuant
     to 42 U.S.C. § 1983. <u>Muraveva v. Toffoli</u>, No. 13-4665
     (D.N.J. filed on August 2, 2013). Following a three-
     day jury trial, the jury returned a verdict in favor
     of the defendant; Plaintiff appealed, and the Third
     Circuit affirmed. <u>Muraveva v. Toffoli</u>, 70 F. App'x
     131, 132 (3d Cir. Sept. 26, 2017). In Plaintiff's
     words, the fact that she was arrested by the Wildwood
     City Police Department in 2011 is related to the
     alleged harassment at issue in this case years later
     because, according to Plaintiff, the reason she was
     arrested was because she and her husband rented to low
     income people. (Pl. Dep. at 52:17-23; <u>see also id.</u> at
     51:23-52:4 ("I'm one of dirt bag how [Mayor Ernie
     Troiano] called us landlords who rent to low class
     people dirt bag. This is our name. Dirt bag.").

o    In January 2012, Plaintiff and her husband were cited
     by the City of Wildwood for having locks on the
     bedroom doors on the second and third floor, and for
     renting out bedrooms individually. (<u>Id.</u> at 23:19-
     24:21.) A reinspection subsequently noted that the key
     locks were removed, and the units were being occupied.
     (<u>Id.</u> at 24:22-25:2.) Plaintiff denies this: "Nothing
     was removed. This was knob locks. We didn't touch any
     locks. We never removed them. They always had them.
     This was conversation. This was fight about." (<u>Id.</u> at
     25:6-9.)

    o    In March and April 2014, Plaintiff was also cited by the City of Wildwood "with respect to repair gutters what I don't have and to paint exterior walls what is vinyl siding." (<u>Id.</u> at 23:6-11.)

On March 19, 2016, Plaintiff also filed another lawsuit in this Court against the City of Wildwood and others alleging a variety of claims arising from the unfortunate death of her husband, Clayton Smith. <u>Estate of Clayton Smith v. City of Wildwood</u>, No. 16-925-JBS-JS (D.N.J. filed on March 22, 2016). This Court recently issued a decision denying the defendants' motion for summary judgment in part. <u>Estate of Clayton Smith v. City of Wildwood</u>, 2018 WL 4639182 (D.N.J. Sept. 27, 2018). Plaintiff does not allege that the Individual Defendants herein had any connection with her husband's emergency treatment and death.

**B.    Procedural History**

On February 10, 2017, Plaintiff filed the instant action. (<u>See</u> Compl. [Docket Item 1].) Defendants timely filed an Answer to Plaintiff's Complaint. (<u>See</u> Answer [Docket Item 5].) On June 15, 2018, the parties stipulated to the dismissal with prejudice of Counts One, Two, Four, Five, Seven, Eight, Ten, Twelve, Thirteen, Fifteen, Sixteen, Seventeen, and Eighteen, and Count Nine except as applied to Paragraphs 61-65 of the Complaint. (<u>See</u> Stipulation of Dismissal [Docket Item 24].) The remaining counts of Plaintiff's Complaint allege the following:

- Count Three: Fourteenth Amendment substantive due process claim, pursuant to 42 U.S.C. § 1983, against the Individual Defendants in their individual capacities;

- Count Six: First Amendment retaliation claim, pursuant to 42 U.S.C. § 1983, against the Individual Defendants in their individual capacities;

- Count Nine: New Jersey Law Against Discrimination ("NJLAD") claim against Defendant City of Wildwood, only as applied to Paragraphs 61-65 of the Complaint;

- Count Eleven: New Jersey Civil Rights Act ("NJCRA") substantive due process claim against the Individual Defendants in their individual capacities;

- Count Fourteen: NJCRA retaliation claim against the Individual Defendants in their individual capacities;

- Count Nineteen: New Jersey Doctrine of Fundamental Fairness claim against Individual Defendants;

- Count Twenty: Common-law malicious prosecution against the Individual Defendants.

(Compl. at ¶¶ 69-70, 73, 76, 78-79, 82, 87, 88-91.) According to the Complaint, as a direct and proximate result of Defendants' actions, Plaintiff "has suffered emotional distress, mental anguish, humiliation, disruption in her usual activities, and attorney's expense for her defense in the Municipal Court." (Id. at ¶ 66.) As relief, Plaintiff requests compensatory damages, punitive damages, reasonable attorney's fees, interest and costs of suit. (Id. at 13.)

Defendants filed the present motion for summary judgment seeking dismissal of all remaining claims with prejudice. (Defs.

12

Br. [Docket Item 21].) Plaintiff filed a brief in opposition

(Pl. Br. [Docket Item 28]), and Defendants filed a reply brief.

(Defs. Reply Br. [Docket Item 29].) The Court convened oral

argument on December 4, 2018 [Docket Item 37], wherein

Plaintiff's counsel further narrowed Plaintiff's remaining

claims, and the motion is now fully briefed and ripe for

disposition.

## III. STANDARD OF REVIEW

At summary judgment, the moving party bears the initial

burden of demonstrating that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a

matter of law. Fed. R. Civ. P. 56(a); accord Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986). Once a properly supported

motion for summary judgment is made, the burden shifts to the

non-moving party, who must set forth specific facts showing that

there is a genuine issue for trial. Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 250 (1986).

A factual dispute is material when it "might affect the

outcome of the suit under the governing law," and genuine when

"the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." Id. at 248. The non-moving

party "need not match, item for item, each piece of evidence

proffered by the movant," but must present more than a "mere

scintilla" of evidence on which a jury could reasonably find for

the non-moving party. <u>Boyle v. Cty. of Allegheny</u>, 139 F.3d 386, 393 (3d Cir. 1998) (quoting <u>Anderson</u>, 477 U.S. at 252).

**IV. DISCUSSION**

Plaintiff generally alleges a variety of constitutional and statutory claims arising from "adverse actions" taken by Defendants and against Plaintiff, which Plaintiff claims infringed upon her Fourteenth Amendment substantive due process rights and/or were the result of retaliation for protected activity. Defendants move for summary judgment on all remaining grounds, which the Court addresses in turn.

**A. Qualified Immunity as to Individual Defendants on Plaintiff's Constitutional Claims**

In moving for summary judgment, Defendants first argue that the Individual Defendants are entitled to qualified immunity on Plaintiff's substantive civil rights claims arising under the U.S. Constitution (<u>i.e.</u>, Counts Three and Six). (Defs.' Br. at 19-22.) Plaintiff argues that the Individual Defendants are not entitled to qualified immunity because Plaintiff can identify two clearly-established constitutional rights that were infringed upon by the Individual Defendants: a substantive due process right under the Fourteenth Amendment and a First Amendment right to be free from retaliation for engaging in protected activity. For the reasons discussed below, the Court

finds that the Individual Defendants are entitled to qualified immunity on these constitutional claims.

Qualified immunity is an affirmative defense that "shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Taylor v. Barkes, 135 S. Ct. 2042, 2044 (2015) (quoting Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012)). Qualified immunity will not, however, act as a shield for "the official who knows or should know he is acting outside the law." Noble v. City of Camden, 112 F. Supp. 3d 208, 225 (D.N.J. 2015) (quoting Butz v. Economou, 438 U.S. 478, 506-07 (1978)). To overcome qualified immunity, the Court must decide whether the facts alleged, taken in a light most favorable to the plaintiff, make out: (1) a violation of a constitutional right; and 2) that the constitutional right at issue was "clearly established" at the time of a defendant's alleged misconduct. Saucier v. Katz, 533 U.S. 194, 201 (2001).

Although the question of qualified immunity is generally a question of law, "a genuine issue of material fact will preclude summary judgment on qualified immunity." Giles v. Kearney, 571 F.3d 318, 326 (3d Cir. 2009); see also Curley v. Klem, 298 F.3d 271, 278 (3d Cir. 2002) (noting that "a decision on qualified immunity will be premature when there are unresolved disputes of

historical fact relevant to the immunity analysis"). In other words, the Court must deny summary judgment if, on a plaintiff's version of the facts, defendants violated the plaintiff's clearly-established constitutional rights.

>    1.    Substantive Due Process claim for deprivation of property

Defendants maintain that the Individual Defendants are entitled to qualified immunity on Plaintiff's substantive due process claim (Count Three) because "in the circumstances that [the Individual Defendants] confronted at the time [it] would be clear to a reasonable official that their conduct was legal, and not done in bad faith or with an improper motive." (Defs. Reply Br. at 6; see also Defs. Br. at 19-22.) Defendants further argue that "[t]here was certainly no evidence presented in this case that defendants attempted to put the plaintiff out of business, or that the City of Wildwood had an official policy of making life difficult for lessors of properties to low income people." (Defs. Reply Br. at 6.)

Plaintiff, on the other hand, argues that the Individual Defendants are not entitled to qualified immunity on this Count because she "has a protected property interest to which the Fourteenth Amendment's [substantive] due process protection applies'" (Pl. Opp. Br. at 1) (quoting Hammond v. Contino, 2014 WL 6388757, at *4 (D.N.J. Nov. 17, 2014)); see also Compl. at ¶¶

69-70), and that the actions of the Individual Defendants "were in bad faith and improperly motivated in that they were an effort to put the Plaintiff out of business in furtherance of the City's official policy of making life difficult for lessors of properties to low income people." (Pl. Opp. Br. at 3.)

As noted above, the threshold question for a qualified immunity analysis is whether a reasonable fact-finder could conclude that the defendant deprived the plaintiff of a constitutional right. To establish a substantive due process violation under the Fourteenth Amendment, a plaintiff must demonstrate that a defendant engaged in conduct that "shocks the conscience." <u>See</u> <u>United States Theatre Circuit, Inc. v. Twp. Of Warrington, PA</u>, 316 F.3d 392, 401-02 (3d Cir. 2003). Crediting Plaintiff's version of the facts as the Court must at this stage, <u>Scott v. Harris</u>, 550 U.S. 372, 378 (2007), the Court finds that Plaintiff has not adduced any such evidence.

At most, the Individual Defendants interacted with Plaintiff on two or three brief occasions surrounding their investigation of the peculiar locks before agreeing to eventually dismiss the Summons against her in its entirety. There is no evidence Plaintiff was physically or verbally abused, or that the Individual Defendants were acting outside their authority in some outrageous manner. The evidence is also clear that the Summons itself was withdrawn. In fact, by

presenting this dispute as a summonsed offense in Municipal
Court, the Individual Defendants were following the law, not
breaching it. Whether Defendants Harwood and Booy were actually
correct or incorrect on the merits of asserting the Fire Code
violation, no reasonable juror could find that their conduct
shocks the conscience. The Court finds that, based on the record
viewed most favorably to Plaintiff, a jury could not reasonably
conclude that the Individual Defendants violated Plaintiff's
substantive due process rights under the Fourteenth Amendment.
The Individual Defendants are entitled to qualified immunity on
Count Three.

    2. <u>Plaintiff's First Amendment retaliation claim</u>

   Defendants argue that the Individual Defendants are also
entitled to qualified immunity on Plaintiff's First Amendment
retaliation claim in Count Six. (Defs. Br. at 19-22.) At oral
argument, Plaintiff's counsel voluntarily dismissed Count Six
against Defendant Harwood and clarified that Count Six is
against Defendant Booy. Accordingly, the Court need only
consider whether Defendant Booy is entitled to qualified
immunity on this Count.

   It is black-letter law that otherwise legitimate and
constitutional government acts are unconstitutional if they are
undertaken in retaliation for free speech activities. <u>Anderson</u>
<u>v. Davila</u>, 125 F.3d 148, 161 (3d Cir.1997). To prove

18

retaliation, a plaintiff must show: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006); see also Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). The question of whether Plaintiff engaged in a protected activity is a question of law and is therefore for the Court to decide. Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006). The remaining questions, however, are questions of fact. Id.

Following oral argument, Plaintiff's retaliation claim against Defendant Booy can be summarized as follows:

- o Plaintiff committed three "acts of opposition" vis-à-vis Defendant Booy that constituted protected speech under the First Amendment: (1) Plaintiff contacted Defendant Booy by phone and questioned why she received the March 2, 2015 Notice of Violations and Order to Correct; (2) Plaintiff denied Defendant Booy access to inspect her property; and (3) Plaintiff, again, denied Defendant Booy access to inspect her property.

- o Defendant Booy retaliated against Plaintiff by issuing the March 16, 2015 Summons for operating the front building as a rooming house;

- o The nexus between Plaintiff's purported acts of opposition and Defendant Booy's "act of retaliation" is that Defendant Booy admitted in his deposition that he issued the Summons, in part, because Plaintiff would not allow access to her property.

Notably, Plaintiff's counsel emphasized at oral argument that Plaintiff was **not** alleging that her previous lawsuits against the City of Wildwood constitute "protected speech" for which Defendants Booy or Harwood retaliated against her.

The Court finds that Plaintiff cannot establish that Defendant Booy violated her First Amendment rights on the theory described above for several reasons.

**First**, Plaintiff's purported "acts of opposition" do not constitute protected activity under the First Amendment. The "speech" was normal conversation during the course of the investigation of a possible local ordinance violation, wherein Plaintiff denied that the door locks and hasps presented a Fire Code problem or that she was maintaining a rooming house on the premises. As far as the record discloses, these were not public statements, there was no public forum, and the matter of public concern involved simply figuring out whether the possible violations did or did not exist. These relatively minor disputes between Plaintiff and Defendant Booy were simply part of the normal process whereby an individual may challenge any notice of violation and/or order to correct and/or summons in the City of Wildwood – a process which, Plaintiff's counsel admits, resulted here in all charges against Plaintiff dismissed and no actual damages (apart from legal fees) incurred.

**Second**, Defendant Booy's decision to issue Plaintiff the March 16, 2015 Summons does not constitute an act of retaliation. Where a person denies the existence of a violation and the municipal inspection has information tending to suggest a violation, it cannot be retaliation for the municipality to issue a summons so that the allegation can be proved or disproved in municipal court. It would trivialize the First Amendment to view the issuance of a summons as retaliation where, as here, a plausible basis for doing so exists and the purported protected activity is nothing more than the property owner's denial. See McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006) ("[I]t would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise.") (quoting Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982)).

**Third**, no reasonable juror could find that Defendant Booy's issuance of a summons would deter a person of ordinary firmness from speaking up to deny the allegation. Instead, the summons invokes a process of dialog in municipal court to resolve the situation, as happened here. Indeed, Defendant Booy's actions did not actually stop Plaintiff from challenging, and ultimately succeeding in dismissing, the Summons in Municipal Court.

**Fourth**, Defendants have demonstrated that Defendant Booy issued the Summons, at least in part, as a response to information relayed to him by Defendant Harwood, and that Defendant Booy would have taken the same action even if Plaintiff had not called him to complain about the two Notices or denied Defendant Booy access to the property.[7] See Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir. 2002) ("[T]he defendant may defeat the plaintiff's case by showing that it would have taken the same action even in the absence of the protected conduct.") (internal citation and quotation marks omitted).[8] There is also no material factual dispute that Defendant Booy would have issued the summons even if Plaintiff had not spoken up to dispute Booy's suspicion of the violation.

For these reasons, Plaintiff cannot as a matter of law establish that Defendant Booy retaliated against Plaintiff in

---

[7] This is also evident from Defendant Booy's letter to Plaintiff on March 3, 2015, indicating that he would issue a summons if she failed to respond to his request for information and inspection. [Docket Item 28-1 at 89, supra.]

[8] The Court further notes that, under the Wildwood City Zoning Ordinances, Defendant Booy is tasked with enforcing statewide zoning regulations and issuing notices of violation for properties and uses not in compliance with zoning ordinances, including unlawful operation of a rooming house. (Booy Dep. at 10:1-5; 15:4-21.) Plaintiff's counsel conceded at oral argument that Plaintiff is not challenging the constitutionality of any Wildwood ordinance or policy. Thus, Defendant Booy's authority to issue the Summons is not at issue in this case.

violation of her First Amendment rights. Defendant Booy is, therefore, entitled to qualified immunity on Count Six.

### B. Plaintiff's Retaliation Claims Against Individual Defendants

Defendants next argue that the Individual Defendants are entitled to summary judgment on Count Six because Plaintiff cannot prove the Individual Defendants retaliated against Plaintiff for exercising her First Amendment rights. (Defs. Br. at 23-26.) Because Plaintiff voluntarily dismissed Count Six against Defendant Harwood at oral argument and the Court finds that Defendant Booy is entitled to qualified immunity on Count Six, see Section IV.B.2, supra, this argument is moot and will not be addressed.

### C. Plaintiff's NJLAD Claim against the City of Wildwood

In Count Nine, Plaintiff brings an NJLAD claim against Defendant City of Wildwood only as applied to Paragraphs 61-65 of the Complaint. (Compl. at ¶¶ 61-65, 82.) In those paragraphs, Plaintiff alleges that, on June 10, 2016, Plaintiff appeared in Wildwood City Municipal Court to answer charges for a traffic violation; that she requested of the Municipal Court Judge a translator from English to Russian; that Plaintiff was not provided a translator from English to Russian; that other similarly situated persons are granted a request for a translator in the Wildwood City Municipal Court; and that

Plaintiff was treated differently from other similarly situated persons based on national origin based animus. (Id.) Defendants move for summary judgment on this Count, arguing that, "[o]ther than her self-serving statements, the plaintiff has not provided any type of evidence (municipal court transcript) indicating that she was denied her request for an interpreter." (Defs. Br. at 29.) At oral argument, Plaintiff's counsel voluntarily withdrew these claims. Accordingly, the Court need not address Defendants' argument on this point and the NJLAD claim against the City of Wildwood is dismissed.

### D. Plaintiff's NJCRA Claims Against Individual Defendants

Defendants argue that the substantive due process and retaliation claims against the Individual Defendants for violation of the NJCRA (Counts Eleven and Fourteen) should be dismissed for the same reasons Plaintiff's claims under § 1983 should be dismissed. (Defs. Br. at 30-31.) The Court agrees, for reasons stated above with respect to Plaintiff's constitutional claims. Furthermore, because the New Jersey Tort Claims Act bars these claims, see Section IV.F, infra, the Court will not address this argument.

### E. Plaintiff's Civil Rights Claims Against Unidentified Wildwood City Police Officers

Defendants next argue that all unnamed Wildwood City Police Officers allegedly involved in the April 9, 2016 incident (where

local police allegedly refused to remove a disruptive tenant)
are entitled to qualified immunity. (Defs.' Br. at 32-37.) At
oral argument, Plaintiff's counsel agreed to voluntarily
withdraw any claims involving the April 9, 2016 incident.
Accordingly, the Court need not address Defendants' argument on
this point, and this claim against the City of Wildwood and
unidentified police officers will be dismissed.

### F. State Law Claims Against Individual Defendants Under the New Jersey Tort Claims Act

Defendants contend that the Individual Defendants are
immune from liability for state law claims against them (i.e.,
Counts Eleven, Fourteen, Nineteen, and Twenty) under the New
Jersey Tort Claims Act. (Defs. Br. at 38-40.) In these Counts,
Plaintiff generally alleges that the Individual Defendants
violated the NJCRA and New Jersey Doctrine of Fundamental
Fairness and engaged in common-law malicious prosecution. For
the reasons discussed below, the Court agrees with Defendants
that the New Jersey Tort Claims Act bars these claims.

Generally, the New Jersey Tort Claims Act immunizes "public
entities and public employees" who "act[] in good faith in the
execution or enforcement of any law." N.J.S.A. § 59:3-3. To
obtain such immunity at the summary judgment stage, a public
employee must "establish that [his or her] acts were objectively
reasonable or that [he or she] performed them with subjective

good faith." Canico v. Hurtado, 676 A.2d 1083, 1085 (N.J. 1996).

In other words, "the public employee must come forward with

proof of a nature and character that would exclude any genuine

dispute of fact as to the application of immunity." Leang v.

Jersey City Bd. of Ed., 969 A.2d 1097, 1112 (N.J. 2009)

(internal quotations and citations omitted).

    Defendants argue that Defendant Harwood and Booy "acted in

good faith in the execution of the violations against the

Plaintiff for having keyed locks placed on the outside of the

interior doors on her property" and were, at all relevant times,

acting in good faith in the performance of their duties in

executing the Fire Code and Zoning Ordinances of the City of

Wildwood. (Defs. Br. at 39.) "This is particularly true,"

Defendants argue, "in light of the fact that, as a result of a

third inspection, any and all charges/violations were dismissed

against the plaintiff without the prepayment of any fees or

costs as the defendants were satisfied that the alleged

violations had been abated." (Id.)

    Plaintiff, on the other hand, avers that because the

Individual Defendants acted with "actual malice," New Jersey

Tort Claims Act immunity does not protect them. (Pl. Opp. Br. at

9010) (citing Hickman v. Freehold Borough, 2017 WL 1197806, at

*15 (D.N.J. Mar. 31, 2017); Leang, 969 A.2d at 1113); see also

N.J.S.A. § 59:2-10. Plaintiff's purported evidence of "actual malice" can be summarized as follows:

- o   Defendant Booy lacked probable cause for the issuance of the summons against Plaintiff on March 16, 2015 for illegal operation of a rooming house, and instead relied entirely on "pure speculation" from Defendant Harwood that Plaintiff was operating the property as a rooming house, "some previous inspection reports which had nothing to do with the current charge," and Plaintiff's refusal to grant Defendant Booy access to the property;

- o   Defendant Booy "did not do any further investigation, nor did he ask Plaintiff for leasing records or whether she was giving out keys to renters, even though he was aware of the procedure to apply for an administrative warrant;"

(Pl. Opp. Br. at 11-12.) In other words, Plaintiff argues that because Defendant Booy (allegedly) lacked probable cause, he necessarily acted with actual malice by issuing the Summons on March 16, 2015

More than the absence of probable cause is required to establish actual malice. Cf. Westhoff v. Kerr S.S. Co., Inc., 530 A.2d 352, 324 (N.J. Super. Ct. App. Div. 1987) (requiring that, in a case of malicious prosecution arising out of a civil action, "it is not unreasonable to require that plaintiff, on a defendant's motion for summary judgment, produce at least some extrinsic evidence of malice" beyond the lack of probable cause). Here, other than labeling the Individual Defendants' conduct as "malicious," Plaintiff produces no grounds for such an assertion. She does not even allege that these defendants

acted discourteously or that there was bad animus directed toward her. The record instead reflects a bona fide dispute about Plaintiff's compliance and the withdrawal of the Summons when the Individual Defendants could determine that Plaintiff appeared to be in compliance. Dropping the Summons after reinspection is evidence from which no inference of malice can be drawn; a malicious officer would have wanted to prolong the dispute, not resolve it. The Court finds that as a matter of law the Individual Defendants' conduct was objectively reasonable. This is especially so given that, upon Defendant Harwood's reinspection, the Summons was dismissed. The Individual Defendants are entitled to qualified immunity under the New Jersey Tort Claims Act on Counts Eleven, Fourteen, Nineteen, and Twenty.

### G. Plaintiff's Malicious Prosecution Claim Against Individual Defendants

The Individual Defendants also argue that Plaintiff's common-law malicious prosecution claim (Count Twenty) should be dismissed on the merits because the Individual Defendants did not act with actual malice. Because the New Jersey Tort Claims Act bars this claim, <u>see</u> Section IV.F, <u>supra</u>, the Court need not address this argument.

### H.  Punitive Damages

Finally, Defendants argue that Plaintiff's claims for punitive damages should be dismissed. (Defs. Br. at 44-45.) A request for punitive damages is "similar to a derivative claim" and is, therefore, a "separate but dependent claim for relief." In re Collins, 233 F.3d 809, 811 (3d Cir. 2000). Because all of Plaintiff's substantive claims will be dismissed, there can be no liability for punitive damages and her claim for punitive damages must be dismissed as well.

### V.  CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment in its entirety. An accompanying Order will follow.


**December 18, 2018**                          **s/ Jerome B. Simandle**
Date                                                          JEROME B. SIMANDLE
                                                                  U.S. District Judge